MIDWESTERN GAS TRANSMISSION COMPANY, Natural Gas Pipeline Company of America, East Tennessee Natural Gas Company, Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent.

Independent Natural Gas Association of America, City of Chicago, American Public Gas Association, Arthur Andersen & Co., Intervenors in No. 15941, Knoxville et al., Intervenors in No. 16017.

Nos. 15941, 15942 and 16017.

United States Court of Appeals
Seventh Circuit.

Jan. 5, 1968.

Rehearing Denied Feb. 7, 1968.

H. R. Begley, Chicago, Ill., Harry S. Littman, Jack Werner, Dale A. Wright, Harold L. Talisman, Washington, D. C., Harry S. Welch, W. C. Braden, Jr., Houston, Tex., Littman & Werner, Washington, D. C., for Midwestern Gas Transmission Co.

William W. Brackett, Charles C. McDugald, Donald W. Glaves, Raymond J. Petersen, Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, Chicago, Ill., for petitioner Natural Gas Pipeline Co. of America.

Richard A. Solomon, Solicitor, F. P. C., Israel Convisser, Atty., F. P. C., Peter H. Schiff, Acting Solicitor, Abraham R. Spalter, Asst. Gen. Counsel, Joel Yoha-

lem, Attorney, F. P. C., Washington, D. C., for respondent, Arnold D. Berkeley, Washington, D. C., Atty., of counsel.

W. P. Gilbert, S. L. Seftenberg, Chicago, Ill., for amicus curiae.

James L. Bomar, Jr., Shelbyville, Tenn., Charles F. Wheatley, Washington, D. C., Christopher T. Boland, Washington, D. C., Mathias M. Mattern, Bernard Rane, Chicago, Ill., Thomas F. Brosnan, George J. Meiburger, Gallagher, Connor & Boland, Washington, D. C., for Independent Natural Gas Association of America, Harry L. Albrecht, Washington, D. C., of counsel.

Before HASTINGS, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

HASTINGS, Chief Judge.

We have before us three petitions to review and set aside orders of the Federal Power Commission.

This proceeding was instituted by the filing of a petition in No. 15941 by Midwestern Gas Transmission Company (Midwestern) pursuant to Section 19(b) of the Natural Gas Act, 52 Stat. 831, 15 U.S.C.A. § 717r(b), for the purpose of reviewing and setting aside the Federal Power Commission's orders dated July 15, 1966 (Opinion 497), and September 9, 1966 (Opinion 497–A, denying rehearing of the July 15, 1966 order).

In No. 15942, the same orders were sought to be reviewed by Natural Gas Pipeline Company of America (Natural).

A petition to review the same orders was filed by East Tennessee Natural Gas Company (East Tennessee) in No. 17543 in the United States Court of Appeals for the Sixth Circuit. This was subsequently transferred to our court and has been docketed here as No. 16017.

It is undisputed that the three petitioners are each a natural-gas company within the meaning of the Act and that their rates for the sale of natural gas in interstate commerce for resale are subject to the jurisdiction of the Commission.

The Commission initiated investigations into the rates, charges or classifications of Midwestern for its southern and northern systems, respectively, by orders issued February 13, 1961, 25 FPC 275, and May 28, 1962, 27 FPC 1041. These were subsequently consolidated, 29 FPC 320.

The Commission subsequently instituted an investigation into the rate design of Natural by an order issued February 25, 1963, 29 FPC 399. This was consolidated with the Midwestern proceedings.

The Midwestern proceedings, except for the depreciation issue now before this court, and the question of rate design, were terminated by Commission Opinion No. 444, issued October 13, 1964. Opinion No. 444, at Midwestern's request, remanded the depreciation issue to the examiner to afford Midwestern an opportunity to show why it had changed to straight-line depreciation and how it would be adversely affected by utilizing liberalized depreciation, 32 FPC at 996.

Midwestern proposed a settlement agreement in connection with its application for a rehearing of Opinion No. 444, which was accepted by the Commission with modifications, 32 FPC 1548. Midwestern's settlement proposal included its offer to refund to its ratepayers $3,569,600 in accumulated deferred taxes, which was accepted. Midwestern also proposed that further proceedings on the reserved depreciation issue be dismissed since it was no longer using liberalized depreciation. This part of the proposal, however, was rejected by the Commission, 32 FPC at 1549.

The rate design issues in Midwestern and Natural were determined by Commission Opinion No. 477, 32 FPC 973, and their rate designs were approved, 34 FPC at 984. The rate designs approved by Opinion No. 477 were challenged in this court by coal interests, but Opinion No. 477 was affirmed February 24, 1967, in Fuels Research Council, Inc. v. Federal Power Commission, 7 Cir., 374 F.2d 842.

By its Opinion No. 456, 33 FPC 574, the Commission computed Natural's cost of service on the basis of federal income taxes resulting from Natural's use of liberalized depreciation. Natural filed

a petition for review in the Court of Appeals for the District of Columbia. In City of Chicago et al. v. Public Service Commission, and Natural Gas Pipeline Company of America v. Federal Power Commission, 385 F.2d 629 on September 8, 1967, the District of Columbia Circuit affirmed "the Commission's policy use of the 'flow through' of the current tax reduction resulting from the use of liberalized depreciation and its application of that policy in limitation of Natural's rate increase." 385 F.2d 629, at 638. However, on one aspect of that case relating to a settlement agreement, with which we are not concerned here, the case was remanded for further proceedings.

The East Tennessee proceeding, with the exception of the depreciation issue, was determined by Commission Opinion No. 488, 35 FPC 534, issued April 19, 1966. The liberalized depreciation issue was severed and reserved for hearing together with Midwestern by the hearing examiner.

On February 3, 1964, prior to the issuance of Opinions Nos. 444 (Midwestern) and 488 (East Tennessee),[1] which left open the treatment of liberalized depreciation, the Commission issued its Opinion No. 417 in the case of Alabama-Tennessee Natural Gas Company, 31 FPC 208 (February 3, 1964); rehearing and stay denied, Opinion No. 417–A, 31 FPC 928 (April 15, 1964). On petition for review, this was affirmed in Alabama-Tennessee Natural Gas Co. v. Federal Power Com'n, 5 Cir., 359 F.2d 318 (1966), cert. denied, 385 U.S. 847, 87 S.Ct. 69, 17 L.Ed.2d 78.

Following hearings by an examiner and his resulting initial decision, the Commission heard oral argument en banc on the reserved tax depreciation in the consolidated Midwestern and East Tennessee cases. On July 15, 1966, the Commission issued its Opinion 497, now under review here, by a divided vote, 3

to 2, and ordered Midwestern and East Tennessee to file reduced rates to reflect the tax savings[2] resulting from liberalized depreciation even though the companies have discontinued liberalized depreciation in favor of straight-line depreciation.

In No. 15941, Independent Natural Gas Association was granted leave to intervene and W. P. Gilbert and Stephen L. Softenberg were granted leave to appear as amicus curiae, both on behalf of petitioners. City of Chicago and American Public Gas Association were granted leave to intervene on behalf of respondent.

In No. 16017, Knoxville Utilities Board and 23 others were granted leave to intervene on behalf of respondent.

We shall first interject at this point a summary of the depreciation practices used by Midwestern and East Tennessee.

Midwestern and East Tennessee, like Alabama-Tennessee, had been using the double declining balance method of liberalized depreciation prior to the Commission's *Alabama-Tennessee* decision on February 3, 1964. On April 29, 1964, the examiner issued his decision in the earlier Midwestern proceeding, following *Alabama-Tennessee*, and recommended that Midwestern's tax savings resulting from liberalized depreciation should be flowed through to the ratepayers. Twelve days later, on May 11, 1964, Midwestern's board of directors ordered that the company use a straight-line depreciation for tax purposes as of January 1, 1963. Before the end of the same year, by order of its board of directors, East Tennessee, which had been using liberalized depreciation since 1954, converted to straight-line depreciation for its 1964 federal tax return.

As above stated, the Commission, by a divided vote, in its Opinion 497, (rehearing denied in its Opinion 497–A, September 9, 1966), determined the reserved tax depreciation issue adversely to Mid-

1. Midwestern and East Tennessee are both subsidiaries of Tennessee Gas Transmission Co.

2. Petitioners contend there can be no "tax savings" but rather only "tax deferrals" under their theory of this case.

western and East Tennessee, even though each petitioner had discontinued liberalized depreciation in favor of straight-line depreciation. This ruling by the Commission is before us in the instant case.

We have reviewed our prior determination of the approval of the rate design issues by this court in Fuels Research, 374 F.2d 842, supra, and adhere to the views therein expressed.

We have made a thorough examination of Judge Wisdom's excellent research and learned consideration of the Commission's "about-face" order in *Alabama-Tennessee,* where the Fifth Circuit gave unqualified affirmance of the Commission's order, as reported at 359 F.2d 318, supra. We need not further detail the exhaustive treatment of that opinion, but hold that we are in complete agreement with it.

Further, we have had occasion to review the scholarly opinion of Judge Leventhal for the District of Columbia Circuit, in the petitions of City of Chicago and Natural, as reported at 385 F.2d 629, supra. That court, after awaiting the *Alabama-Tennessee* action by the Fifth Circuit, followed that opinion with approval and ruled, *inter alia,* adversely to Natural, as above indicated. We shall not further elaborate on that opinion, but express our complete approval of its holding on the "flow through" issue.

There are a variety of challenged issues presented by the numerous parties to this review.

Natural seeks an outright reversal of the prior decisions of the Fifth and District of Columbia Circuits in the foregoing decisions. Having already indicated our adherence to those cases, Natural's position is summarily rejected.

Most of the issues originally raised have been effectively settled by *Alabama-Tennessee* and *Natural.*

However, one basic distinction between the instant case and *Alabama-Tennessee* remains to be considered. The conversion to straight-line depreciation by Midwestern and East Tennessee, while their cases were pending, introduced an element not present in *Alabama-Tennessee,* which had continued to use liberalized depreciation.

Petitioners strenuously urge that their choice of straight-line tax depreciation was an act of managerial judgment, committed to the reasonable discretion of management, and that the Commission grossly erred in substituting its judgment for that of the boards of directors. Indeed, the strongly worded dissents by Commissioners O'Connor and Bagge lend persuasive comfort to the view that the majority grossly violated the basic concept that such matters lie entirely within the scope of managerial discretion.

However, on balance, we believe the action of the Commission in the situation before us, does not lend itself subject to the unsupported charge of being violative of an exclusive managerial decision. On the contrary, we have concluded that here the Commission cannot be required to subordinate its own expertise to that of a claimed managerial judgment.

Except to the extent that Midwestern has agreed to adjustment as of a prior date, the impact of the Commission's determination would be prospective only. It has now been judicially determined that the use of the projected liberalized depreciation will result in tax savings for a number of years, rather than tax deferrals. It has been further adjudicated that it is valid to require flow through to consumers of the tax reductions achieved through the use of liberalized depreciation. The record sustains the view that petitioners have a growing or stable plant condition in the foreseeable future. It was further determined that the declining depreciation of older assets is offset by the increasing depreciation on new assets under the continuing use of liberalized depreciation, where at least some capital additions continue to be made, and will exceed straight-line depreciation. Certainly there is no credible support for concluding that the Commission was not reasonably warranted in making its favorable estimates of future plant growth for both petitioners.

448

■ We think it reasonable to understand that management decision to revert to straight-line depreciation was to choose the one method certain to result in maximum tax costs to themselves, with resulting maximum rates to the consumers. The justification for this course by management is not convincing and therein lies the basic fault which leads to the conclusion that managerial discretion has exceeded its reasonable course and compels the intrusion of regulatory intervention.

We freely recognize, as does the Commission, that there are many areas and many situations which must remain within the jurisdiction of management. However, it has long been recognized that establishment of public utility charges involves the assessment of costs for a public service. Basic to the purpose of the Natural Gas Act is a design of regulation concerned with final adoption of rate charges fairly intended to protect the public interest. Necessarily, the area of tax policies embraces managerial decisions directly reflected in the cost of natural gas supplies for the use of the ultimate customer. Here it seems to us quite reasonable and logical to recognize as inherent in the Commission the duty and requirement to exercise its expertise in evaluating the entire tax effect of managerial judgment. If such elected tax policies do not fairly indicate a reasonable and prudent business expense, which the consuming public may reasonably be required to bear, following the required hearing and review procedures, then federal regulatory intervention is required.

■ We conclude, therefore, that under the circumstances found present here, the decision of petitioners to abandon the liberalized method of depreciation in favor of the straight-line method, furnishes no material variance to distinguish the result found here from that reached in the cited cases. The determination of the Commission, though hotly disputed by its own minority, is supported by the record and will be affirmed.

■ In our judgment, the rates found and the conclusions reached by the Commission, are adequately supported by the record.

The other distinguishing factor hereinabove referred to, between the present case and *Alabama-Tennessee,* is the fact that Midwestern voluntarily refunded to its ratepayers its deferred tax reserve it had accumulated in the sum of $3,569,600. We understand that this sum represented the difference between the federal income taxes actually paid by Midwestern on the basis of liberalized depreciation and the greater amounts included for income taxes in its cost of service on the basis of normalization. The ratepayers paid a somewhat larger amount to cover the taxes on the difference.

Although not required by *Alabama-Tennessee* to do so, Midwestern chose to refund this reserve, thereby gaining a tax saving of about $1,700,000, which it was not required to reflect in reduced rates. This matter was eventually resolved through a settlement agreement which was modified and then was finally approved as modified to provide that the adjustment, if any, to Midwestern's rates to reflect the Commission's final disposition of the reserved issue, shall be effective as of October 13, 1964.

■ We conclude that the settlement agreement properly reflects the agreement of all parties and that, as to Midwestern, the Commission correctly determined the effective date to be October 13, 1964, rather than to make it prospective only as was the case with East Tennessee.

Enough has been said and determined by the decisions of the Fifth and District of Columbia Circuits to adequately dispose of other questions raised. We have carefully considered the many contentions and authorities cited by all parties, intervenors and amicus curiae and have found no reason to change our view of affirmance. The record amply supports the Commission's findings.

We have considered the request of the Commission to dismiss Natural from these proceedings for want of aggrievement. While we consider that the District of Columbia Circuit decision rather effectively disposed of Natural and we find nothing persuasive in Natural's argument here, Natural was admitted originally on its petition to review in No. 15942, and we shall not disturb its present posture.

The petitions for review and to set aside orders of the Federal Power Commission are each denied and the orders of the Federal Power Commission under review are in all respects affirmed.

Petitions denied. Orders affirmed.